IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER RAMOS JIMENEZ, | CASE NO. 03-10070-GAO |
| Petitioner, | CIVIL CASE NO. |
| vs. | THE HONORABLE GEORGE A O'TOOLE |
| UNITED STATES OF AMERICA, | U.S. DISTRICT COURT JUDGE |
| Respondant. | MAGISTRATE JUDGE |

04 12667 GAO

### MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

Comes now the Petitioner, Alexander Ramos Jimenez, appearing Pro-Se, who respectfully moves this Honorable Court to vacate the sentence imposed in the above captioned case, pursuant to 28 U.S.C. § 2255 and for the reasons further presented infra.

### PLEA FOR LIBERAL CONSIDERATIONS

Petitioner respectfully moves this HOnorable Court to grant all liberal considerations with respect to this action, pursuant to Haines v. Kerner, 404 U.S. 519 (1972), as Petitioner is not an attorney, and has had no professional training with respect to the filing of legal pleadings.

## STATEMENT OF THE CASE

On December 27, 2002, the Petitioner appeared before the Honorable Robert B. Collings, United States Magistrate Judge, on a criminal complaint. The Petitioner was held without bail until a detention hearing could be held. On December 31, 2002, a detention hearing was held and the Petitioner again appeared before Magistrate Judge Collings, who ordered the Petitioner be held without bail.

On March 19, 2003, a one-count Information was filed in the U.S. District Court, Boston, Massachusetts charging the Petitioner, Alexander Ramos Jimenez did knowingly and intentionally possess with intent to distribute, and did distribute, 100 grams or more of a mixture or substance which contains a detectable amount of heroin, a schedule I controlled substance, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(i).

On April 29, 2003, the Petitioner appeared in the U.S. District Court in Boston, before the Honorable George A. O'Toole, he waived indictment, and entered a plea of guilty to the felony information. After a factual basis was presented, the Court accepted the plea and sentencing was scheduled for September 4, 2003.

On September 4, 2003, a sentencing hearing was held and the Petitioner was sentenced at a level 23, which was 46 months of incarceration.

On December 27, 2002, the Boston, Massachusetts Drug Enforcement Administration (DEA) Task Force agents received information regarding a pending drug transaction with a hispanic male named "Alex" who was traveling from New York to Boston via Amtrak train number 2150. A check of the train manifest confirmed that a hispanic male with the first name of "Alex" was on board the Amtrak train from New York. DEA Task Force agents established a surveillance at the South Amtrak Station in Boston. Agents boarded the train outside of Boston and they confirmed that someone matching the description of "Alex", the Petitioner was indeed aboard the train. At approximately 11:45 a.m., the Petitioner, debarked at the South Station and he was then met by an undercover DEA Task Force officer who was acting in an undercover capacity and who identified himself as the person to whom the Petitioner was to deliver the package of drugs.

Upon meeting the undercover Task Force agent the Petitioner asked about another individual who he was to deliver the package of drugs to the undercover agent then told the Petitioner that the other person was outside in the car because there was no place to park at the South Station parking lot. The Petitioner then used a cell phone to call the individual and both he, the Petitioner, and the undercover Task Force agent spoke to the person.

After the cell phone conversations, the Petitioner and the undercover Task Force agent agreed to exchange the drugs in the restroom and then go outside so that the individual to whom they spoke could pay the Petitioner. While in the restroom, the

Petitioner entered a stall where the undercover agent could hear him refling through his luggage tearing tape. The Petitioner exited the stall and handed the undercover agent a package consisting of five strips of several "fingers" of heroin joined by packing tape. Upon a signal from the undercover agent, the Petitioner was arrested as he exited the restroom.

A Drug Enforcement Administration laboratory analysis confirmed that the substance that the Petitioner delivered to the undercover Task Force agent was 501.8 grams of heroin.

## STATEMENT OF FACTS

On December 27, 2002, the Petitioner was arrested by Task Force agents assigned to the Boston, Massachusetts DEA office on a federal charge of violating Title 21 U.S.C. § 841(a)(1), to wit knowingly and intentionally possess with intent to distribute, and did distribute, 100 grams or more of a mixture or substance which contained a detectable amount of heroin, a schedule I controlled substance.

The Petitioner was identified as a result of a narcotics investigation that was being conducted by Task Force agents assigned to the DEA Boston, Massachusetts field office. The Task Force agents had received information regarding a drug transaction with a hispanic male named "Alex" who was allegedly traveling by

Amtrak train number 2150 from New York to Boston. A check of the train manifest confirmed that a hispanic male with the first name of "Alex" was indeed on board the Amtrak train from New York. DEA TAsk Force agents established a surveillance at the South Station in Boston.

On December 27, 2002, at appoximately 11:45 a.m., the Petitioner, debarked at the South Station, where upon he was met by an undercover DEA Task Force officer who was acting in an undercover capacity and who identified himself as the person to whom the Petitioner was to deliver the package of drugs. Upon meeting the undercover Task Force agent, the Petitioner inquired where was the individual the Petitioner had been instructed to deliver the package of drugs to. The undercover agent told the Petitioner that the particular individual was outside in the car because there was no place to park at the South Station parking lot. The Petitioner then used a cell phone to call the individual and both the Petitioner and the undercover Task Force agent spoke to the person. After the cell phone call, the Petitioner and the undercover Task Force agent agreed to exchange the drugs in the restroom of the train station. After the Petitioner handed the undercover Task Force agent a package consisting of five strips of several "fingers" of heroin joined by packing tape. Upon a signal from the undercover agent, the Petitioner was arrested by other Task Force officers as he exited the restroom of the train station.

On December 27, 2002, the Petitioner appeared before a United

States Magistrate Judge on a criminal complaint. The Petitioner was held without bail. On December 29, 2002, a detention hearing was held and the Petitioner again appeared before a U.S. Magistrate Judge who again ordered the Petitioner to be detained without bail.

On March 19, 2003, the Petitioner appeared in U.S. District Court in Boston, Massachusetts on a one count information charging him with violation 21 U.S.C. § 841(a)(1) and (b)(1)(B)(i) which states, that the Petitioner, "did knowingly and intentionally possess with intent to distribute, and did distribute, 100 grams or more of a mixture or substance which contained a detectable amount of heroin, a schedule I controlled substance.

On April 29, 2003, the Petitioner again appeared in U.S. District Court in Boston, where he waived indictment and entered a plea of guilty to the felony information. The Court accepted the plea and sentencing was scheduled for September 4, 2003.

On September 4, 2003, the Petitioner was sentenced by the Honorable George A. O'Toole of the U.S. District Court in Boston, Massachusetts to 46 months of incarceration.

### ARGUMENTS

The Petitioner respectfully asks this Court to preserve this issue and open the doors for it to be heard on this 28 U.S.C. §

2255 motion. As this Court is well aware the Sixth Amendment to the United States Constitution guarantees that every criminal defendant is enteitled to the assistance of counsel in presenting his or her defense. "The right to counsel is a fundamental right of criminal defendants, it assures the fairness, and the legitimacy of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 376, 374, 106 S.Ct. 2574, 2582 (1986), and Cuyler v. Sullivan, 466 U.S. 335, 343, 100 S.Ct. 1708, 1715, 80 L.Ed.2d. 657 (1980).

Furthermore, the Supreme Court has recognized that "The right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970). The right to effective assistance of counsel at any critical stage encompasses the right to have an advocate for one's cause. Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322 (1940), Estelle v. Smith, 451 U.S. 454, 469-71, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), Kirby v. Illinois, 406 U.S. 682, 688-89, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967)/ Counsel must "subject the prosecution's case to meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 20-39, 2947 (1984). The Sixth Amendment right to counsel extends to sentencing in federal cases." Mepha v. Rhay, 389 U.S. 128, 134 (1967). Courts have often recognized that one of the important functions of defense counsel at sentencing is to ensure that the defendant is sentenced on the basis of accurate information. In Townsend v. Burke, 334 U.S. 736 (1948), the United States Supreme Court stated that

"counsel would have been under a duty to prevent the Court from proceeding on such false assumptions and, perhaps, under a duty to seek remedy elsewhere if the persisted."

The Supreme Court established the test for determining whether a defendant has received the effective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2055 (1984). The High Court states that "the bench mark for judging any claim of ineffectiveness must be where counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." The Strickland test has two components, both of which must be satisfied to establish that defense counsel's performance was ineffective. First, "the defendant must show that the counsel's performance was deficient." Second, the defendant must show that the deficient performance prejudiced the defense. See also United States v. Ricardo, 78 F.3d 1411, 1418 (9th Cir. 1995). A petitioner seeking to prove ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Morris v. California, 966 F.2d 488 (9th Cir. 1991) (quoting Strickland); see also Hendricks v. Caldeeron, 70 F.3d 1032 (9th Cir. 1995), (holding that whether an attorney's conduct falls within the broad range of professionally acceptable conduct should be determined by examining what was known and reasonable at the time the attorney made his choices).

The Sentencing Guidelines provide for a reduction in the

offense level under § 3B1.2 based on a defendant's minimal or minor role in the overall offense. As a preliminary matter, the Petitioner wishes to inform this Honorable Court that he is in no way attempting to minimize his conduct in the instant offense. However, the Guidelines provide for an offense level adjustment in situations like the Petitioner's, and the Petitioner contends that his attorney was ineffective for failing to seek an offense level reduction at sentencing.

As this Court knows, Sentencing Guideline section 3B1.2 states:

> Based on the defendant's role in the offense, decrease the offense level as follows:
> (a) if the defendant was a minimal participant in any criminal activity, decrease by four levels.
> (b) if the defendant was a minor participant in any criminal activity, decrease by two levels.
>
> In cases falling between (a) and (b), decrease by three levels.
>
> (c) 201.1(b)(6) and 5G1.2 (1-5) stated: If the defendant meets the criteria set forth in subdivisions (1)-(5) of 5C1.2 (Limitation on Applicability of Statutory Minimum Sentence in Certain Cases) and the offense level determined above is level 26 or greater, decrease by 2 levels.

At the Petitioner's sentencing hearing, his attorney did not seek a reduced offense level based on the Petitioner's

mitigating role as a minimal, or minor participant. "The defendant has the burden of proving by a preponderance of the evidence that he is entitled to a downward adjustment based on his role in the offense." United States v. Ladum, 141 F.3d 1328 (9th Cir. 1998).

Clearly, it is the duty of a defendant's attorney to raise the issue of a mitigating role pursuant to § 3B1.2. A criminal defendant, particularly a foreign national with a very limited ability to speak or understand the English language, cannot be penalized for his ignorance of the United States Sentencing Guidelines. This is especially true where allegedly competent counsel has been appointed to represent the defendant. It was the attorney's duty to explore every possible avenue that could result in a shorter sentence for the Petitioner, and he clearly failed to perform that duty. A defendant is entitled to a downward adjustment if he played a minor or minimal role and was "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 comment. United States v. Benitez, 34 F.3d 1489. The Petitioner recognizes that a defendant is not automatically entitled to a sentence reduction simply because he is less culpable than his co-participants, Benitez, 34 F.3d at 1489. The Petitioner asserts, however, that his role in the offense warranted a four (4) Level reduction under § 3B1.2(a), because he played a minimal role in the concerted criminal activity, was the least culpable of all those involved in the criminal enterprise and the activities of the other participants.

At the very minimum, the Petitioner's role in the offense warranted a two level reduction under § 3B1.2(b), because the Petitioner was less culpable than other participants. See U.S.S.G. § 3B1.2.

The Petitioner was merely a courier or "mule" in the drug trafficking scheme that resulted in his conviction. The Petitioner received instruction from the undercover agent as well as another person who he spoke to on the telephone prior to giving the drugs to the undercover agent. The Petitioner's role was most certainly less culpable than those, who owned the drugs and those, who owned the drugs and those who set up the transaction. The Government's reports make it clear that the Petitioner was under the complete direction and control of others. U.S.S.G. § 3B1.2 specifically allows for a downward role for the Petitioner as a minimal/minor participant. The participants "lack of knowledge or full understanding of the scope and structure of the enterprise and of the activities of others" is indicative of his role as a minimal/minor participant. U.S.S.G. § 3B1.2. The Petitioner has been prejudiced as a result of his attorney's failures, because he missed his only opportunity to request the mitigating role which had an excellant chance of success.

The Petitioner submits that his attorney's failure to seek an offense level reduction under that section of the guidelines amounts to ineffective assistance of counsel, particularly when viewed in light of the fact that he mett all of the requirements for the reduction.

Lastly, the District Court did not apply the two prongs of the analysis announced in United States v. DeVaron, 175 F.3d 930 (11th Cir. 1999) (en banc). At sentencing, the burden is on the party seeking the mitigating-role reduction to prove, by a preponderance of the evidence, that he is entitled to a reduction. First, the District Court must measure the defendant's role against his relevant conduct, that is to say, that the court should compare the defendant's actual conduct with the conduct for which he has been held accountable. Second, where the record evidence is sufficient, the District Court may measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant. In this case, the Petitioner was charged with possession with intent to distribute heroin. The Petitioner was just a courier/mule in the conspiracy who did not have any discretion for independent decision, making power. The Petitioner was substantially less culpable than others who owned the drugs and those who had set up the heroin transactions with the undercover officers.

The Petitioner only delivered the heroin for the organization as he was told. Clearly, the Petitioner "totally lacked the knowledge or understanding of the scope and structure of the narcotics enterprise at hand and of the activities of others in the organization." The record reveals that the Petitioner was instructed to go to Boston, Massachusetts by co-participants and to deliver the 501.8 grams of heroin to an undercover Task Force officer. Upon meeting the undercover Task Force officer in Boston the Petitioner still had to wait for further telephonic

instructions to proceed with the narcotics transaction. At no one time did the Petitioner act independantly, he was told to deliver some narcotics to someone by co-participants in Venezuela, upon arriving at the designated site for the transaction the Petitioner had to receive further instructions from co-participants in the United States. Again, all of the Petitioner's actions were those of a courier. The Petitioner never negotiated the terms or the price of the narcotics transaction, neither was the Petitioner in any type of managerial role in the conspiracy. Plain and simple, the Petitioner was substantially less culpable than others. In addition to the two-prong ananlysis discussed, the DeVaron court counseled that a district court may consider, when ruling on a request for a minor-role reduction, the amount of drugs involved in the offense. In this case the Petitioner had a half a kilo of heroin.

## CONCLUSION

The Petitioner respectfully requests that this Honorable Court vacate, set aside, or correct the sentence in this case, as the Petitioner was denied his Sixth Amendment right to the effective assistance of counsel.

I declare under the penalty of perjury that the above statement is true and accurate to the best of my knowledge.

Alexander Ramos Jimenez
Pro-Se

CERTIFICATE OF SERVICE

I certify that on <u>April 18</u>, 2004 I maile a complet copy of this Motion to Vacate, Set Aside or Correct Sentence, Pursuant to 28 U.S.C. § 2255, and all attachments to all parties, addressed as shown below:

Clerk's Office
United States District Court
District of Massachuseets
One Courthouse Way
Boston, MA.  02210


United States Attorneys
District of Massachusetts
Jown Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA.  02210

Respectfully submitted,

Alexander Ramos Jimenez
Pro-Se
Reg. No. 24565-038
F.S.L. Elkton
P.O. Box 10
Lisbon, Ohio 44432